Lyle SANDBERG et al., Plaintiffs
and Appellees,

v.

Beryle SMITH and Dena Smith,
Defendants and Appellants.

Civ. No. 9090.

Supreme Court of North Dakota.

Oct. 30, 1975.

Hjellum, Weiss, Nerison, Jukkala &
Vinje, Jamestown, for plaintiffs and appel-
lees; argued by John Hjellum, Jamestown.

MacKenzie & Jungroth, Jamestown, for
defendants and appellants; argued by
James R. Jungroth, Jamestown.

VOGEL, Judge.

In this appeal we are required to interpret a homemade contract drawn by the parties. The contract, no model of draftsmanship, reads:

"Oct 17th 1966

"We the undersigned give Beryle and Dena Smith the rental of a portion of the B & H Ranch at Woodworth No. Dak. to run some livestock and also winter said livestock on land not in program.

"We also agree to pay a sum of $100.00 (one hundred dollars) a month. Also the use of some haying equipment.

"For this consideration Mr. Smith must care for some grass cattle for us.

"This is to be a ten year contract.

"Signed

"B & H Ranch

"by Jacob Boomsma

"Beryle Smith

Woodworth N. D.

"[Notary's seal and jurat]"

"B & H Ranch" was a partnership between Jacob S. Boomsma and Kenneth R. Huizenga. Even if we assume that "B & H Ranch" describes an identifiable geographical area as well as a partnership, the contract fails to describe what portion of it is rented, what livestock is to be allowed to run on it, and what part of the land is "not in program." Nor does it identify the program referred to, the haying equipment to be used, or the grass cattle to be cared for by the Smiths.

■ The parties agree that the contract is ambiguous, but nevertheless they recognized that it was in effect for some purposes, at least, from approximately October 17, 1966, until October 24, 1973, the date of the commencement of the action. Their acts showing the construction they placed on the agreement may be looked to by the court. *Battagler v. Dickson,* 76 N.D. 641, 38 N.W.2d 720, 722 (1949).

The B & H Ranch is divided into two parts by a township road. Parts of it, on both sides of the road, which had been cultivated in prior years, were put into a CAP program of the United States Department of Agriculture in 1966. The CAP program was similar to the former soilbank program, and the lands included in the program could not be farmed, pastured, or hayed without special permission from the Department of Agriculture.

Among the disputes between the parties were (1) whether the "portion of the B & H Ranch" on which the Smiths could run livestock included non-CAP land on both portions of the ranch, or only the portion north of the township road; (2) whether the Smiths or B & H had the right to sublease non-CAP land south of the road; and (3) how the proceeds of subleases were to be distributed. Also, the Smiths claim that (4) the court erred in interpreting the contract as giving some rights for its full ten-year term but terminating it for other purposes at the end of eight years.

The action was originally commenced against the Smiths by the plaintiff Sandbergs, sublessees of B & H, because of a dispute as to ownership of hay put up by them. The Smiths claimed the right to the hay. B & H was made a party to the original action and interposed claims against the Smiths.

I

■ The trial court was presented with the contention of B & H that the only lands affected by the homemade contract were the lands lying north of the township road, and the contention of the Smiths that the entire B & H Ranch was covered by the contract, except for the portion which was under the CAP program.

The court found in accordance with the contentions of B & H, in part because of its conclusion that the parties could not have intended to enter into a contract so one-sided as the Smiths contended it to be. Under that interpretation, the Smiths would have

the use of several thousand acres of land, plus payments of $100 per month for ten years, in return for only slight duties of caring for fences and caring for cattle during such summers as B & H chose to pasture cattle there. In fact, B & H pastured cattle on the property only one summer.

The Smiths contend that the favorable nature of the contract is accounted for by the fact that CAP contracts required participation by (and presumably sharing of proceeds with) all "operators" and that the real purpose of the contract between B & H and the Smiths was to make Mr. Smith an employee rather than an "operator" (as he perhaps had been under prior dealings with B & H) and thereby permit B & H to enter into the CAP contract without sharing the proceeds with him.

We cannot say that the court committed any error in making its determination. Rule 52(a), N.D.R.Civ.P., precludes reexamination of fact questions unless the trial court's finding is clearly erroneous. We hold that the finding is not erroneous.

## II

Both B & H and the Smiths at various times accepted payment for allowing others to cut hay or otherwise use the non-CAP property. Boomsma and Huizenga knew that the Smiths had received some such funds. Sometimes they knew the amounts they had received, sometimes not. During the early years of the agreement B & H made payments of the $100 per month to the Smiths, but later they stopped making the payments, in part because they knew the Smiths had received money from others.

Having found that the Smiths had no rights as to the land south of the township road except to cut hay on non-CAP acres, the trial court concluded that the Smiths had no right to the proceeds of any leases on the land south of the road. There was evidence to support the court's conclusion, which was not clearly erroneous.

## III

Several times the Smiths either plowed up or cut hay on part of the land subject to the CAP program. The Department of Agriculture thereupon assessed penalties against B & H, and B & H paid the penalties. The Smiths do not dispute the amounts of the penalties, the payment by B & H, or the propriety of charging the Smiths for such penalties.

Ultimately, the trial court determined that the Sandbergs were entitled to seven stacks of hay taken by the Smiths, and that the Smiths were entitled to $100 per month during the ten-year term of the contract with B & H, or a total of $12,000 from B & H. The court further found that the Smiths were liable to B & H for a total of $20,026.57 for penalties assessed against B & H and for rentals belonging to B & H which had been appropriated by the Smiths, and for offsets of payments made by B & H to the Smiths during the early years of the contract at the rate of $100 per month. The court thereupon ordered that B & H have judgment against the Smiths for $8,026.57, representing the difference between $20,026.57 and $12,000. The court also determined that the remaining two-year term of the contract should be canceled because of the breaches of the contract by the Smiths. Whether a contract should be canceled for breach depends upon the facts of each case. *American Life & Casualty Ins. Co. v. Otis Hann Co.*, 124 N.W.2d 830 (N.D.1963). We find no error.

## IV

The Smiths assert that the trial court committed prejudicial error in inconsistently allowing them $12,000 of compensation for services (ten years at $100 per month) while canceling the contract as of the time of judgment, approximately eight years after it was entered into.

The trial court was well within its authority in determining that the Smiths had breached the contract and had thereby given grounds for termination.

■ True, once the contract was terminated, the Smiths would not be entitled to a continuation of the $100 per month payments for the remainder of the original ten-year term of the contract. But the continuation of the payments provided for in the judgment was a provision in their favor, of which they cannot complain. The other parties do not object, and the Smiths cannot take advantage of something favorable to them in order to obtain a reversal. *Burt v. Lake Region Flying Service,* 78 N.D. 928, 54 N.W.2d 339 (1952). Or, as we put it in *Maier v. Holzer,* 123 N.W.2d 29 (N.D.1963), referring to an order granting a new trial unless an additur were agreed to:

"If the granting of the additur on the part of the trial court was error, which we do not here decide, it was error favorable to the appellant and certainly not prejudicial to him. It deprived him of no rights and imposed no burden upon him. Its presence in the order does not adversely affect him. He cannot complain in this Court. Error that is not prejudicial is not reversible error." 123 N.W.2d 29, at 33.

Affirmed.

ERICKSTAD, C. J., and SAND, PAULSON and PEDERSON, JJ., concur.