Russell KULSETH, d/b/a Kulseth
Construction and Lumber,
Plaintiff and Appellee,

v.

Bill ROTENBERGER, a/k/a Dr. William
Rotenberger, Defendant and Appellant.

Civ. No. 10131.

Supreme Court of North Dakota.

June 10, 1982.

921

John A. Amundson, Bowman, for plaintiff and appellee.

William W. Binek, Bowman, for defendant and appellant.

VANDE WALLE, Justice.

Rotenberger appealed from a judgment and an order denying his motion to alter or amend findings of fact, conclusions of law, and order for judgment. The judgment awarded Kulseth $1,525.95 following a dispute involving an oral contract. We modify the judgment and, as modified, affirm.

In the spring of 1974 Kulseth agreed to construct for Rotenberger two metal buildings, a shop and a barn. He prepared a worksheet, which the parties have referred to as a contract or bid. The shop was to cost $9,634, which included the cost for materials, insulation, a cement slab in place, three metal overhead doors, and labor. Sales tax, freight, a drain, and a steel bin were separate. The cost for the materials alone was $4,350.

The materials for the two buildings were delivered to the construction site in July 1974. In August, Kulseth poured the footings for both buildings. He did not, however, pour the cement slab for the floor of the shop.

On August 20, Kulseth presented to Rotenberger a job invoice in the amount of $8,000 for the materials for the two buildings, of which Rotenberger paid $5,000. No further payments were made.

Prior to October 9, 1974, Kulseth removed the materials for the barn from the worksite, the parties apparently having mutually agreed to a rescission of that part of their agreement. Hence the barn was no part of this lawsuit except as to the footings.

The trial court found that by December 21, Kulseth had completed the shop except for the slab, the hanging of the three overhead doors, and the insulating of the building. It found the overhead doors to have been installed by February 18, 1975, but one door was not operational because of a missing part. Kulseth's testimony indicates that the shop was 90 percent complete at that time, except for the insulation, the slab, and some trim around the doors.

Work on the shop stopped on February 19. Kulseth's son, LaVerne, the foreman on the job, was told by Rotenberger on February 18 not to install galvanized trim around the doors because Rotenberger wanted white trim. The next day Rotenberger telephoned LaVerne and told him to stop any further work but gave no reason for the order. No further work was done on the building by Kulseth.

Rotenberger testified that he stopped work because Kulseth had installed fiberglass doors when the contract called for steel doors. There is testimony that Rotenberger's reason for stopping work was not communicated to Kulseth until July 24 at which time Rotenberger, through his attorney, contacted Kulseth by letter requesting him to either install steel doors, pour and finish all concrete work, and install all insulation or effect mutual rescission of the contract with no more work to be done by Kulseth and nothing to be paid by Rotenberger.

Correspondence involving the dispute was exchanged between the parties—Rotenberger insisting that, at all times, the contract called for steel doors; and Kulseth, on the other hand, insisting that Rotenberger originally ordered fiberglass doors and changed his mind after they were installed. Kulseth

thereafter offered to install steel doors only if Rotenberger would pay for the steel doors and for additional labor as well as making an adjustment for the fiberglass doors. Unable to settle their dispute, they proceeded to trial with Kulseth suing Rotenberger on a theory of quantum meruit for the reasonable value of materials and services rendered.

Rotenberger believed the $5,000 he had already paid was adequate compensation for what Kulseth had done, and he counterclaimed for damages for the amount he was required to pay over the original contract price to have others install steel doors and complete the shop.

The trial court found that Kulseth furnished to Rotenberger materials and services of the reasonable worth of $7,243.25, from which was deducted $180, which the court determined to be the reasonable worth of installing steel doors as called for by the contract, and also offset $537.30, representing the difference between the quoted price for doors under the contract ($1,050) and the price quoted for steel doors by Kulseth some months later ($1,587.30). The court further allowed for the $5,000 which had already been paid by Rotenberger.

The trial judge stated that Rotenberger failed to show that he was damaged any further by Kulseth's failure to furnish steel doors.

### ISSUES

The issues are as follows:

1. Whether or not the trial court erred in awarding damages to Kulseth.

2. Whether or not the trial court's finding of fact No. XI as to the amount of materials and labor furnished by Kulseth is clearly erroneous.

Rotenberger argues that Kulseth failed to substantially perform under the contract and is precluded from recovering anything. Rotenberger's position is that he would have to expend $10,494.32 to complete the building, which is $92.81 more than the $10,401.51 that he would have had to pay Kulseth. For this reason Rotenberger claims the trial court erred in not returning

a judgment in his favor in the amount of at least $92.81. Rotenberger's argument is based on the trial court's finding of fact No. IX, that the contract called for steel doors, and conclusion of law No. I, that Kulseth breached this part of the contract.

Kulseth, on the other hand, argues that his cause of action does not involve substantial performance but is based on quantum meruit, for which he is entitled to recover the reasonable value of materials and services rendered to Rotenberger. If a contractor does not substantially perform he is entitled, at most, to the value of the benefit that he has conferred upon the owner under a theory of quantum meruit or unjust enrichment, and not the contract price minus the defects. *Van Den Hoek v. Bradwisch*, 273 N.W.2d 152 (S.D.1978). Rotenberger relies on the case of *Dittmer v. Nokleberg*, 219 N.W.2d 201, 206 (N.D.1974), which states that "if the contractor fails substantially to perform he may not recover at all under his contract." However, that decision does not necessarily preclude a recovery on a quantum meruit, which is a recovery of the reasonable value of goods and services rendered as opposed to a recovery based on contract values. This interpretation is reinforced by our recent decision in *Allied Realty, Inc. v. Boyer*, 302 N.W.2d 774 (N.D.1981), in which Allied did not satisfy the terms of an exclusive listing agreement. This court, however, determined that Allied was entitled to a recovery upon quantum meruit because the defendant, Boyer, received some value for the services performed by Allied.

We have no disagreement with the principles regarding substantial performance enunciated in *Nokleberg*. The instant case, however, involves a claim based upon quantum meruit and *Nokleberg* is not, therefore, dispositive.

The cross-rights of the parties to a contract when there has been a breach by the plaintiff are explained in *Williston on Contracts*, 3d Ed., § 1484, as follows:

"Since the plaintiff has wrongfully broken his contract, the defendant may by

recoupment or counterclaim, or other available procedure, get appropriate damages deducted from the plaintiff's recovery. [Footnote omitted.]

"If the measure of the plaintiff's damages is based, as it has been argued it should be, on the benefit which the defendant receives from the plaintiff's performance, the situation is that the defendant pays for something different from what the contract called for, such a sum as that something is worth, and the contract stands as totally unperformed.

"The defendant then has a cross-right for the same damages to which he would have been entitled had the plaintiff repudiated his contract without any performance—the difference between the contract price of the building, and the cost in the market of erecting such a building."

The Second *Restatement of Contracts* sets forth the rule as follows:

"§ 374.   Restitution in Favor of Party in Breach

"(1) Subject to the rule stated in Subsection 2), if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach." 3 A.L.I. *Contracts 2d* § 374.

"The action upon a quantum meruit is of equitable origin, and is still governed by considerations of natural justice." *Wellston Coal Co. v. Franklin Paper Co.*, 57 Ohio St. 182, 48 N.E. 888, 889 (1897); *Williston on Contracts*, 3d Ed., § 1485.

■ It was Kulseth's burden, in this case, to prove the reasonable value of his performance and he was successful.  It was Rotenberger's burden to prove lack of substantial performance and the reduction in value or costs of repair from Kulseth's failure to install the steel doors.  See *Klug &*

*Smith Co. v. Sommer*, 83 Wis.2d 378, 265 N.W.2d 269, 273, fn. 4 (1978).

■ We believe that the facts of this case support an award to Kulseth based on quantum meruit.  Although it did not specifically state it in its findings or conclusions, the trial court's award of damages to Kulseth was based on quantum meruit. The trial judge explained that finding of fact No. XI was his determination of the materials and labor furnished to Rotenberger.

The trial court found that Kulseth furnished services and materials in the amount of $7,243.25, and that Rotenberger proved his damage for Kulseth's failure to install the steel doors in the amount of $717—representing $180 for labor to install steel doors and $537 for the additional cost for steel doors instead of fiberglass doors. These figures were based on the amount for which Kulseth offered to install steel doors after the dispute arose.

The trial court further found that Rotenberger had failed to prove that he was damaged any further by Kulseth's breach and refused to give damages to Rotenberger in the amount he claims to have paid another contractor to install the steel doors. At the hearing on Rotenberger's motion to alter or amend findings of fact the trial judge stated:

"The Court recognizes and did, in its findings, if not specifically, that Defendant was entitled to metal doors and having been damaged by any action of the other party that he is entitled to mitigate damages.  However, the Court questions the Defendant's right to mitigate damages by going out and having work redone and buying more expensive doors than he had been quoted to by the Plaintiff and the Court agrees, though I don't think that I so recited it in the findings, that this situation was a breach by both parties."

We note that there was testimony indicating that Woodley, the subsequent contractor hired by Rotenberger to finish the shop, installed an 11 by 16-foot overhead steel door where a 10 by 16-foot door was to

be installed. Testimony also indicates that the $271.12 paid to Woodley for materials was for materials for this alteration.

█ The court also refused to award any damages for amounts expended in excess of Kulseth's estimated costs for insulating the building and installing the cement slab. The amount Rotenberger estimated as the cost to have the building insulated, $950 to $1,000, was unreasonable because he delayed putting in the insulation for so long that it nearly doubled in cost.[1]

We believe the trial court was correct in refusing to award damages to Rotenberger for Kulseth's failure to install the insulation. The same can be said with regard to the cement slab.

In this instance a recovery upon quantum meruit for the reasonable value of services rendered by Kulseth is justified. See *Allied Realty, Inc. v. Boyer, supra*, 302 N.W.2d at 779. Rotenberger received a benefit from Kulseth's performance. There is nothing in the record to indicate that what Kulseth had accomplished up to the stop-work order was negligently constructed or unusable. The parties' disagreement involved only the installation of fiberglass doors instead of steel doors. It was this disagreement which precipitated Rotenberger's order to stop work which, in turn, resulted in Kulseth's inability to pour the cement slab and install the insulation.

Although we agree with the trial court's awarding damages to Kulseth based on quantum meruit, a further inquiry is necessary to determine whether or not the trial court awarded the correct amount.

Rotenberger contends that the trial court's finding of fact No. XI is clearly erroneous because it compensates Kulseth for labor and materials which were either not furnished or incorrectly furnished by Kulseth. Finding of fact No. XI is as follows:

"XI

"That the Plaintiff furnished materials and labor to the Defendant in the amount of $7,243.25; this is itemized as follows:

| | |
|---|---|
| "Building materials | $4350.00 |
| "Labor (to construct shop) | 1464.00 |
| "Steel Beam (over big O.H. Door) | 87.50 |
| "Sales Tax on materials & Beam | 177.50 |
| "Freight on Building materials | 100.00 |
| "17½ Yards of cement | 393.75 |
| "Anchor bolts and bolts for base plate | 58.50 |
| "408 feet of footings at 1.50 | 612.00 |
| | "$7243.25" |

We can overturn only those findings of fact that are clearly erroneous. Rule 52(a), N.D.R.Civ.P.

Because Kulseth's recovery was based on quantum meruit, the trial court's award was for the reasonable value of the materials and services rendered. See *Allied Realty, Inc. v. Boyer, supra*, 302 N.W.2d at 779.

The $4,350 is a reasonable amount for the building materials. This amount does not include the cost for the overhead doors or cement. Kulseth delivered all the materials for the shop to the jobsite. His failure to install all the trim was due to Rotenberger's stop-work order and his demand to switch from galvanized trim to white trim. There is no evidence to indicate that Kulseth did not deliver all the trim for the building. Therefore, the trial court's award of $4,350 for the building materials is reasonable and is supported by the evidence and the findings of fact.

The award of $1,464 for labor to construct the shop is not supported by the evidence. Testimony by Kulseth indicates the building was 90 percent complete when he stopped working on it. We note that on September 15, 1975, after work had been stopped for some time, Kulseth prepared a job invoice charging $1,098, three-fourths of

---

1. Kulseth's estimate for insulating the building was $520 including labor, assuming that Rotenberger was going to assist in the installation.

$1,464, for labor done on the building. Although there was contradictory evidence as to the state of completion of the building, Kulseth's own testimony indicates that the shop was no more than 90 percent complete and that percentage included the nearly complete installation of fiberglass doors, which later had to be removed.

We believe, therefore, that the trial court erred in awarding to Kulseth 100 percent of his labor costs on the building. Accordingly, we modify the trial court's judgment so as to award Kulseth $1,098, which is the amount Kulseth believed was due him for labor on the building when he was ordered to stop work. Therefore, the judgment to Kulseth is reduced in the amount of $366. Rule 35(b), N.D.R.App.P.

The inclusion of $87.50 for the steel beam installed by Kulseth for the large overhead door is not clearly erroneous. Rotenberger's witness, Woodley, testified that Kulseth's large fiberglass door could not have worked the way it was being installed. However, Woodley was testifying with respect to an 11 by 16-foot door where Kulseth was installing a 10 by 16-foot door. There was no testimony that a 10 by 16-foot steel door required a different beam from that required for a fiberglass door of the same size. We are not convinced that the steel beam installed by Kulseth could not have been used with a 10 by 16-foot steel door.

The worksheet prepared by Kulseth listed the beam separately from the building materials; however, no estimated cost is indicated. Kulseth testified that he did not know the cost of the beam at the time he prepared the worksheet. For this reason we do not accept Rotenberger's argument that the beam should have been included

with the estimated cost of the building materials. There is sufficient evidence, therefore, to sustain the allowance of $87.50 for the beam.

Although there appears to be some discrepancy in the figures for sales tax and freight, the record is not clear and the amounts are *de minimis*.

There is no argument as to the amount awarded for the cement because it involves the cement for both sets of footings which were completed by Kulseth.

Rotenberger contests the award of $58.50 for anchor bolts and bolts for base plate because these were not itemized on the worksheet prepared by Kulseth. We do not accept Rotenberger's argument that they should have been included in the cost for materials. There was no testimony that they were not used on the shop and there was no testimony that the bolts were ordered with the materials for the building. There is an invoice in the record which indicates that these bolts were included with the cement and labor for the foundations. The amount awarded for these bolts is supported by the evidence and the findings of fact.

We note that the amount awarded to Kulseth for the materials and labor for the footings, including the $58.50 for anchor bolts and bolts for base plate, is less than the amount Kulseth sought under the contract.[2]

The $612 allowed for labor for 408 feet of footings is correct because it includes the footings for both buildings and there is no dispute that Kulseth completed this part of both buildings. At oral argument Rotenberger's counsel indicated that each building had 204 feet of footings.

2. For the barn's foundation Kulseth estimated the cost at $589.10, including concrete and labor. The foundation for the shop was included in the $2,250 estimate for the slab. Nevertheless, because the foundations for both the shop and the barn were the same, it is reasonable to assume their costs would be the same for a total of $1,178.20 for the two of them. The trial court awarded $1,064.25 for the footings which we, using finding of fact No. XI, have calculated as follows:

| | |
|---|---:|
| 17½ yards cement | $ 393.75 |
| Anchor bolts and bolts for base plate | 58.50 |
| 408 feet of footings at $1.50 (labor) | 612.00 |
| | $1,064.25 |

For the reasons stated above we conclude that finding of fact No. XI is clearly erroneous only insofar as the trial court found that Kulseth was entitled to $1,464 for 100 percent of the labor on the shop. The proper amount allowable is $1,098. Kulseth's judgment of $1,525.95 is therefore reduced in the amount of $366 for a total judgment of $1,159.95. Rule 35(b), N.D.R.App.P.

The action of the trial court in awarding Rotenberger the sum of $717 on his counterclaim and its refusal to award further damages for amounts spent by Rotenberger to have other contractors pour the slab and install insulation is consistent with the evidence and the findings.

The judgment is modified and, as modified, is affirmed.

ERICKSTAD, C.J., and PEDERSON, PAULSON and SAND, JJ., concur.