Randy TOBIAS, Appellee,

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellant.**

Civ. No. 890166.

Supreme Court of North Dakota.

Nov. 20, 1989.

**176**

Blaine L. Nordwall (argued), Asst. Atty. Gen., Human Services Dept., Bismarck, for appellant.

Lies, Bullis and Grosz, Steven J. Lies (argued), Wahpeton, for appellee.

ERICKSTAD, Chief Justice.

The North Dakota Department of Human Services appeals from a district court judgment reversing a Department order denying reimbursement costs incurred by Randy Tobias doing business as Tobias Construction.[1] We reverse.

Randy Tobias is a general contractor and sole proprietor of Tobias Construction. Tobias met with several representatives of the Vocational Rehabilitation Division (hereinafter VR) of the North Dakota Department of Human Services to discuss what modifications would be necessary to make the home of Richard Krump, handicap accessible. Richard Krump is disabled and confined to a wheelchair.

An oral agreement was reached between VR and Tobias whereby Tobias was to modify the bedroom, bathroom, and kitchen areas and install an elevator in the Krump home. VR requested, and Tobias submitted, written estimates of labor and materials required for the project. VR contends that it informed Tobias that it needed these figures in order to set aside the proper amount of money for the project.

Tobias' labor estimate was $21,125. This written estimate included the following language:

"The labor breakdown on Rick Krump's project is as follows: However, they may vary somewhat depending on exactly what we run into once we open up the project and actually start."

Tobias' estimate for materials was $13,237.33. The written estimate for materials contained the following language:

"The attached list is an estimate of what is necessary for the Krump project. If additional materials are necessary you will be billed extra. If there is a credit due because of mis-figuring that will also be issued."

Tobias started the project in September of 1985. He contends that he was still unsure as to exactly what was to be done, as VR had not provided him with any blueprints or specific plans. Certain problems were encountered during the project. Tobias contends that as there were no plans or specifications, he could not have contemplated the problems or have given a realistic estimate of the costs before construction began. He contends he had to spend additional money for labor and materials in order to keep the construction area clean because of Krump's health needs and to keep the temperature of the house constant as Krump was living in the house during the modifications. He asserts he also ran into problems in the construction of the elevator. To comply with the building code, Tobias had to dig footings for the elevator. While digging the elevator footings, he ran into granite chunks which hampered the digging. Because the house was 90 years old, the walls and floors had to be leveled so that the elevator could smoothly move within the elevator shaft. Finally, because roofing shingles were not replaceable, they had to be removed carefully so that they could be used again on

---

1. This case was initiated by the filing of a claim by Tobias with the Department of Human Services. It did not arise as a suit against the Department through the service of a summons and complaint and a filing thereof in district court. Accordingly, we do not apply the clearly erroneous rule of Rule 52(a), N.D.R.Civ.P., to the decision of the district court, nor do we review the decision of the district court.

the elevator shaft so that there would be some conformity.

Tobias billed and VR paid for labor in the amount of $5,000 on September 30, 1985. VR contends that Dennis Buckman, a VR officer, met with Tobias on October 29, 1985, and informed him of a $17,000 limit on any further labor authorizations. Tobias contends that he was never specifically told that there was a limitation on the funds and that he was never aware of such a limitation. Tobias submitted the following four separate billings for labor: $3,857.00 on October 31, 1985; $6,364.06 on March 6, 1986; $5,384.00 on April 30, 1986; and $11,290.14 on May 5, 1986. The first three billings were paid in full, but VR paid only $1,394.94 of the last amount billed, as the $17,000 authorized maximum had been reached. Tobias was paid $13,237.33 for materials, the amount of his original estimate.

In addition to the above-described payments, VR paid Tobias an additional sum of $1,988.00 for additional expenses associated with the construction of a concrete base for the elevator and electrical wiring which were not contemplated in Tobias' materials and labor proposals. Tobias now claims an additional $9,895.20 in labor and $8,080.75 in materials over and above his initial estimates.

An administrative hearing was held on February 4, 1987, before Mr. Robert Brady, hearing officer. Tobias' claim was denied by order executed by John A. Graham, Executive Director of the North Dakota Department of Human Services. The findings of fact of the Department of Human Services are as follows: [2]

"*Findings of fact:* The evidence of record has been considered and appraised, and from the facts at issue the following findings are made:

"(1) An oral agreement was reached in June, 1985, between the Vocational Rehabilitation Division (VR) and Randy Tobias, doing business as Tobias Construction (Tobias) wherein Tobias agreed to modify the home of a VR client in Wahpeton in accordance with the plans, specifications, and instructions provided by VR, and VR agreed to pay him for his services on the basis of labor and materials plus an unspecified allowance for profit which Tobias would include in his cost proposals. Compensation could be adjusted by mutual agreement of the parties upon a showing of additional expenses due to unforeseen construction problems.

"(2) Pursuant to that agreement, Tobias submitted a proposal and a billing for estimated materials in the sum of $13,237.33 on June 19, 1985, and VR, in turn, paid Tobias $13,237.33.

"(3) Pursuant to that agreement, Tobias submitted a proposal for estimated labor in the sum of $21,125 on July 16, 1985, and an initial billing was thereafter submitted by Tobias for $5,000 of that amount, which was, in turn, paid by VR on September 30.

"(4) A final authorization for remaining labor was approved by VR on September 30, in the amount of $17,000. Tobias thereafter submitted the following four separate billings for labor: $3,857 on October 31, 1985; $6,364.06 on March 6, 1986; $5,384.00 on April 30, 1986; and $11,290.14 on May 5, 1986. The first three billings were paid as billed, but VR paid only $1,394.94 of the last amount billed, as the $17,000 authorized maximum had been reached. [Amended Findings of Fact.]

"(5) In addition to the above-described payments, VR paid Tobias an additional sum of $1,988 for additional expenses associated with construction of a concrete base for an elevator and electrical wiring which were not contemplated in Tobias' materials and labor proposals.

2. Following the administrative hearing, a May 4, 1987, decision was issued by John A. Graham, Executive Director, North Dakota Department of Human Services, affirming VR's denial of the Tobias claim. Following notification by Tobias' attorney that a statement found in "the evaluation of the evidence" in the administrative decision was disputed by Tobias, Amended Findings of Fact on Reconsideration were issued on February 22, 1988. The Findings of Fact in the text are the amended findings.

"(6) On October 29, 1985, well in advance of the completion of the project, VR representatives met with Tobias and notified him that the $17,000 authorized for labor on September 30 would be all that he could draw from for all remaining outstanding or anticipated labor costs, and that he should plan and adjust his labor budget accordingly. Tobias gave no indication that this was not acceptable or could not be done.

"(7) Tobias' claim for an additional $9,895.20 in labor and $8,080.75 in materials is over and above his initial proposals. In order to establish a valid claim, either on the basis of an express agreement with VR, or on the basis of an applied [sic] [implied] contract or quantum meruit, he has the burden of proving, by verifying documentation, not only that such expenses were actually incurred, but that they had not been already paid. [Amended Findings of Fact.]

"(8) Tobias was unable to produce business records or other reliable verification which substantiated his claim. The records he did produce following the hearing cannot be considered as supportive verification of unpaid materials and labor because he did not keep a record of those items of labor and materials which had already been paid. Therefore, he had no way of determining his claim. In fact, that post-hearing information generally concerned items that were included in the initial proposals and which presumably had already been paid by VR.

"(9) Many of the items of labor and materials contained in the information submitted by Tobias after the hearing, as well as the dollar totals associated with each, are inconsistent on their face with the items and amounts identified by Tobias at his hearing. This inconsistency, when viewed together with the fact that Tobias could not show that he ever kept an accounting of expenses incurred and reimbursed, requires the conclusion that Tobias' claim for additional money owed to him by VR had to have been fabricated in this instance.

"*Decision:* Tobias has failed to establish a claim for any additional amounts due him from VR and the denial of his claim is affirmed."

On Tobias' appeal to the District Court for Richland County, the court reversed and remanded the case to the Department of Human Services, concluding that Tobias was entitled to recover $9,895.20 for labor and $8,080.75 for material. The court, in finding of fact number 14, said that the findings of fact made by the agency were not supported by a preponderance of the evidence. The Department then appealed to this Court.

On appeal the Department contends that Tobias has not demonstrated that he is entitled to any additional payment from VR and that the payments demanded by Tobias are forbidden by law.

■ When an administrative agency decision is appealed to the district court and then to this Court, we review the decision of the agency and not the decision of the district court. *Montana Dakota Utilities Company v. Public Service Commission,* 413 N.W.2d 308 (N.D.1987); *Skjefte v. Job Service of North Dakota,* 392 N.W.2d 815 (N.D.1986). Accordingly, we review the record compiled before the agency rather than the findings of the district court. *Application of Zimbelman,* 356 N.W.2d 99 (N.D.1984).

■ Our review of administrative agency decisions involves a three-step process: (1) Are the findings of fact supported by a preponderance of evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is that agency decision supported by the conclusions of law? *Falcon v. Williams County Social Service Board,* 430 N.W.2d 569, 571 (N.D.1988); *Otto v. Job Service North Dakota,* 390 N.W.2d 550 (N.D.1986). In determining whether or not the agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could reasonably have determined that the factual conclusions were supported by the weight of the

evidence. *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214 (N.D.1979).

■ No one disputes that an oral contract was reached between Tobias and VR but the terms of that contract are at issue. It is well established that courts will not enforce a contract which is vague, indefinite, or uncertain, nor will they make a new contract for parties. *Gift v. Ehrichs,* 284 N.W.2d 435 (N.D.1979); *Drees Farming Assoc. v. Thompson,* 246 N.W.2d 883 (N.D. 1976). However, it is also well settled that courts do not favor, but will lean against destruction of contracts because of uncertainty. If feasible, agreements will be construed so as to carry into effect the reasonable intention of the parties, if that can be determined. *Id.* The terms of an implied contract are manifested by conduct. Section 9–06–01, N.D.C.C. When dealing with contracts implied in the fact the court is required to determine the intentions of the parties from the surrounding circumstances. Section 9–07–12, N.D.C.C.; *St. John P.S.D. v. Engineers–Architects,* 414 N.W.2d 285, 287 (N.D.1987).

■ The Department's finding number 1 indicates that the parties had an agreement for "services on the basis of labor and materials plus an unspecified allowance for profit." The Department contends that Tobias was to include his "allowance for profit" in his original labor and material estimates to VR and that those figures were to constitute the payment figures of the contract. Tobias contends that since there were no plans or specifications at the time he submitted his estimates, the figures were merely estimates. He also contends that since the agreement was a cost-plus contract, and since he indicated in his estimates that the costs might vary, he had "a legitimate right to believe that there was no limit as to the Krump project after submitting those documents that clearly did not limit his costs."

■ In construing an ambiguous contract which has been partly executed, the court may consider the parties' actions after entering into the contract in ascertaining the intentions and construction placed upon the contract by the parties. *Beeson*

*v. Wyndmere Public School District,* 427 N.W.2d 346, 348 (N.D.1988); *Beck v. Lind,* 235 N.W.2d 239 (N.D.1975); *Sandberg v. Smith,* 234 N.W.2d 917 (N.D.1975). There is conflicting testimony as to whether or not Tobias was aware that his "allowance for profit" was to be included in his original estimate. There is also conflicting testimony as to whether or not Tobias was informed of the subsequent $17,000 limit. In these situations, this Court's power to review is limited. We have said:

> " 'The general frame of the power of judicial review is to keep the administrator within the valid statute which guides him and keep him from unreasonable excesses in the exercise of his function, and to ascertain whether there is warrant in the law and the facts for what the administrative agency has done, the court being limited to questions affecting constitutional power, statutory authority, and the basic prerequisites of proof. The primary limitation upon the power of the court to review is in regard to matters calling for the exercise of expert judgment which are committed to the discretion of the administrative agency. Thus, judicial review is extremely limited in regard to findings of fact and to expert judgments of an administrative agency acting within its statutory authority. The courts must not usurp the functions of the administrative agency nor intrude upon the domain which the legislature has entrusted to the agency.' *Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur.,* 171 N.W.2d 104, 111 (N.D. 1969), quoting from 2 Am.Jur.2d Administrative Law § 612, at 453–454 (1962)."

*Inglis v. North Dakota Workmen's Comp. Bureau,* 312 N.W.2d 318, 323 (N.D.1981).

Should it be asserted that the agency acted less than expertly, we note the constitutional reason for giving credence to administrative agencies. In *Haggart,* we quoted from 2 Am.Jur.2d Administrative Law § 613, as follows:

> "Generally, the legislature is precluded from imposing nonjudicial powers upon the courts, and the doctrine of the separation of powers prohibits the legislature

from providing for a review which is too intensive—a review which in fact would constitute the delegation of nonjudicial functions to the judiciary. Upon review of action of an administrative agency, the court is confined to determination of judicial as distinguished from administrative questions, and the very nature of the judicial function itself limits judicial review of action administrative or legislative in nature. (footnotes omitted)."

*Haggart, supra* at 112.

In its administrative findings, the Department found that Tobias was to include his "allowance for profit" in his original cost proposals, and that therefore, in order to establish a valid claim for an additional amount over and above his initial proposals, "either on the basis of an express agreement with VR, or on the basis of an applied [sic] [implied] contract or quantum meruit, he has the burden of proving, by verifying documentation, not only that such expenses were actually incurred, but that they had not been already paid."

It is the burden of the contractor, suing on a theory of quantum meruit, to prove the reasonable value of his performance. *Kulseth v. Rotenberger,* 320 N.W.2d 920 (N.D.1982). Parties suing under an implied contract theory have the burden of proving that they were not compensated for the reasonable value of their services. *See Firefighters Local 642 v. City of Fargo,* 321 N.W.2d 473 (N.D.1982); *Skinner v. Clausen,* 219 N.W.2d 161 (N.D.1974). The Department found that Tobias was unable to produce business records or other reliable verifications which substantiated his claim. Tobias concedes that he has the burden of proving that the additional amounts were spent on material and labor for the Krump project. He contends, however, that his proof of additional amounts spent do not have to be proved by documentation or records, but that oral testimony and circumstantial evidence are sufficient proof. Tobias also contends that he was not required by VR to include any verification other than his bill in order to get paid throughout the project, and that this behavior formed a "course of dealing"

between the parties. VR contends that for the most part, the payments were verified by authorization forms, submitted to Tobias by VR and returned by Tobias to VR, which included a column designated "maximum authorized amount," with a specific amount inserted each time.

While stating that the conduct between himself and VR established a "course of dealing," Tobias refers us to a number of cases which stand for the proposition that evidence of "custom and usage" is admissible to ascertain the intent of the parties to contracts. There is a distinction, however, between "course of dealing" and "custom and usage" or "usage of trade" as it is referred to in North Dakota. Section 41-01-15(1) and (2), N.D.C.C., distinguishes them this way:

"*Course of dealing and usage of trade.*

"1. A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

"2. A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court."

Thus, "course of dealing" refers to the relationship between the specific parties, while "usage of trade" refers to the practice of the trade or industry.

We do not believe that the limited contacts between VR and Tobias established a "course of dealing," which would excuse Tobias from being required to prove his expenses. We believe that "course of dealing" should be proved as any other fact, as "custom or usage" is required to be proved. *Hager v. Devils Lake Public School Dist.,* 301 N.W.2d 630, 634 (N.D. 1981); *Peterson v. McCarney,* 254 N.W.2d 438 (N.D.1977). We do not believe that

Tobias has carried the burden of proving his costs of labor and material or that his loose practice is common in the industry.

The Department based its finding partly upon the fact that Tobias did not produce, at the hearing, any records relative to the project. Several weeks after the hearing, Tobias submitted a collection of receipts from suppliers for materials which he claimed had been incorporated into the project at issue. The Department found inconsistencies in the expenses Tobias claimed at the hearing and those which he submitted post-hearing. The Department also found that Tobias submitted receipts for materials which had presumably been paid by VR. Assuming for discussion purposes only that the Department had entered into a cost-plus contract, which it denies, we believe a reasoning mind could have reasonably concluded that Tobias failed to prove that the additional amounts were spent on material and labor for the Krump project. If a reasoning mind could so reasonably conclude, the finding is supported by a preponderance of the evidence. *Power Fuels, Inc., supra,* 283 N.W.2d at 220.

The judgment is reversed and the matter remanded to the district court for entry of a judgment affirming the Department's order.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.