Hillsborough,
No. 4415.

IDA B. NEWCOMB & a.

*v.*

JAMES H. RAY & a.

Argued June 8, 1955.

Decided June 22, 1955.

*Howard B. Lane* (by brief and orally), for the plaintiffs.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* (*Mr. Wiggin* orally), for the defendants.

GOODNOW, J.   On April 8, 1950, the parties entered into a written agreement by the terms of which the defendants agreed to sell and the plaintiffs agreed to buy certain real and personal property in Bedford known as the Bedford Cabins at a total price of $33,000. On the same date the plaintiffs paid the sum of $3,300 towards the purchase price and agreed "to pay the balance in the amount of $29,700 upon taking possession of the aforementioned property

which will be on or about June 1, 1950." It was also "mutually agreed that in the event that the buyers are unable to sell their property located in Brattleboro, Vermont, by June 1, 1950, that the sellers agree that upon the payment of $6,700, making a total down payment of $10,000, that the sellers will give to the buyers an extension of time to enable the buyers to complete the sale of their Vermont property." On May 23, 1950, the Vermont property being unsold, the plaintiffs paid to the defendants the additional $6,700 stipulated in the agreement. On October 18, 1950, the defendants informed plaintiffs' attorney by letter: "[We are] unable to continue indefinitely and . . . [we] must have a definite word from Mrs. Newcomb not later than November 1, 1950. [We] would not like to see Mrs. Newcomb forfeit the money that she has paid down but [we] cannot guarantee that she will receive a rebate in any amount after the above mentioned date." To this letter the defendants received no reply and on November 10, 1950, they sold the property in question to third parties for $26,000, a price which the Trial Court found to be the reasonable value of the property at that time. The defendants at all times remained in possession of the property. The Trial Court found "that Ida Newcomb used every reasonable effort to sell her Vermont property and complete her obligations under the contract." It also found "however, that the plaintiffs delayed more than a reasonable time in completing the purchase of the property" and that the loss and damage thereby caused to the defendants amount to $2,000. A verdict for the plaintiffs in the sum of $8,000 was returned.

The extension clause in this contract provides that upon payment of an additional $6,700 by the buyers, "the sellers will give to the buyers an extension of time to enable the buyers to complete the sale of their Vermont property." The construction to be placed upon this clause presents a question of "what the parties meant by the words they employed. What intention did they express?" *Berke Company* v. *Bridge Company,* 98 N. H. 261, 265, 266. In the first instance this intention was a matter to be determined by the Trial Court in the light of "all the evidentiary facts and circumstances bearing thereon" (*Barnard* v. *Insurance Company,* 88 N. H. 292, 293) subject to review by this court. *Pettee* v. *Chapter,* 86 N. H. 419, 424.

By its findings and rulings, the Trial Court in effect found that the parties intended by this clause to allow to the plaintiffs a reasonable period of time beyond June first in which to complete

the purchase from the defendants. The sale of the Vermont property by the plaintiffs was treated as the reason for the extension and not as the event which should be determinative of the period during which the extension should exist. No time being fixed for them to dispose of the Vermont property and complete their contract with the defendants, the plaintiffs were entitled to a reasonable time in which to do so. *White* v. *Poole,* 73 N. H. 403, 404. With this interpretation we are in agreement. Construing the clause, as the plaintiffs urge, to provide that the period beyond June first should include whatever time was required "to enable the buyers to complete the sale of their Vermont property," limited only by the continued reasonable efforts of the plaintiffs to do so, would impute to the defendants an intention to retain the property for whatever number of months or years the plaintiffs might require to complete that sale. "The inconvenience, hardship, or absurdity which one construction would lead to is often strong evidence in favor of another or different construction involving no objections of that character." *Kendall* v. *Green,* 67 N. H. 557, 563.

"Reasonable time is not an inflexible term. It depends commonly upon the circumstances of each case." *Hazelton* v. *Stores,* 88 N. H. 409, 414. It is a question of fact to be determined by the trier of facts. Neither the necessity for the plaintiffs to sell their Vermont property in order to finance the purchase from the defendants nor the reasonableness of their efforts to do so were the sole controlling factors to be considered by the Trial Court in determining whether they were allowed a reasonable time after June first in which to complete their purchase from the defendants. They were simply two of "the circumstances of the transaction" upon which the reasonableness of the time afforded to the plaintiffs was to be determined. *Pickering* v. *Pickering,* 38 N. H. 400, 408. Other circumstances for the Court's consideration were the general purpose and intention of the parties to the transaction, the nature of the property involved and the limited season for its business use and sale. The finding that "the plaintiffs delayed more than a reasonable time in completing the purchase of the property," while not compelled by the evidence, is not without foundation. The Trial Court's determination must be sustained.

The exceptions of the plaintiffs are overruled.

The failure of the plaintiffs to complete the purchase of the defendants' property within a reasonable time after June first was a breach of their contract. The fact that they made every reason-

able effort to sell the Vermont property and did not willfully delay the transaction does not justify or excuse them. They might have provided against it by their contract. *Lavigne* v. *Lavigne,* 87 N. H. 223, 226.

The question next arises whether the plaintiffs, who were in default without legal excuse, can recover from the sellers, who were not in default, the money paid upon the contract and retained by the sellers. Under the rule which has generally prevailed in this country, they cannot do so even though the seller may have made a profit by the default and the contract contains no forfeiture provision. *Hill* v. *Grosser,* 59 N. H. 513. See *Great United Realty Co.* v. *Lewis,* 203 Md. 442, 446; anno. 31 A. L. R. (2d) 96. On the basis of the decision in *Hill* v. *Grosser,* 59 N. H. 513, *supra,* this state has been classified as one which follows this rule. 31 A. L. R. (2d) 98n. It seems apparent from the decisions of this court in analogous cases, however, that the strict common law rule has long been relaxed in this state. *Francoeur* v. *Stephen,* 97 N. H. 80; *Danforth* v. *Freeman,* 69 N. H. 466; Restatement, Contracts, s. 357. In this case, the plaintiffs' failure to perform their part of the contract within a reasonable time was neither willful nor deliberate but was a breach of the agreement which justified the defendants in their sale of the property to third persons. The plaintiffs, however, rendered a part performance that was a net benefit to the defendants and they are entitled to judgment "for the amount of such benefit in excess of the harm that [they have] caused to the defendant[s] by [their] own breach." Restatement, Contracts, s. 357.

The Trial Court found that the price of $26,000 for which the cabins were sold by the defendants on November 10, 1950, was the fair market value of the property "then as well as on April 8, 1950"; that "as a result of the plaintiffs' failure to complete the contract, the defendants have sustained a loss of $1,300 for real estate commission for the sale" to the third parties and legal fees amounting to $84.10. It also found "that $2,000 will adequately compensate the defendants for their special damages and other work and effort expended in assisting Ida in her efforts to complete the contract" and returned a verdict for the plaintiffs in the sum of $8,000. The defendants' exceptions to this verdict and certain of the findings must be sustained.

The finding of the Trial Court as to the fair value of the property in question on April 8, 1950, and the predicating of its

verdict on that finding was improper. No claim of fraud, coercion or other equitable cause for relief was at any time asserted by the plaintiffs. In fact the position of the principal plaintiff, Ida, was that "I would love to have [taken them over] because I loved the cabins . . . but . . . I couldn't get my home sold and couldn't get the money from the bank." The parties stood on an equal footing when they made their agreement of April 8, 1950, and are bound by the measure of value which they adopted in it. *Bedel* v. *Loomis*, 11 N. H. 9, 19. If the property was worth only $26,000 when the contract was made the defendants were nevertheless entitled to the benefit of their bargain which they lost because of the plaintiffs' breach. *Hurd* v. *Dunsmore*, 63 N. H. 171; *Cf.* *Lupien* v. *Rousseau*, 98 N. H. 459.

In the hands of the defendants, the part payments made by the plaintiffs represent a net benefit to the defendants to the extent that, when added to the net amount actually received by the defendants from the sale of the property, they exceed the net amount which the defendants would have received from the property if the plaintiffs had completed the purchase of it. Omitting consideration of the legal expenses of $84.10, an item chargeable to the defendants in any event upon the sale of the property, the net amount which the defendants would have received if the plaintiffs had completed their purchase would have been $29,700, the purchase price of $33,000 less the real estate commission of $3,300. On the same basis, the net amount actually received from the sale of the property was $24,700, the sale price of $26,000 less the real estate commission of $1,300. The net amount of $24,700 actually received by the defendants from the sale plus the net amount of $6,700 received by them from the plaintiffs totals $31,400. The net benefit to the defendants is the difference between this total and the $29,700 which they would have received had the plaintiffs performed the contract. The plaintiffs are entitled to that part of $1,700 which is "in excess of the harm" caused to the defendants by the plaintiffs' breach of the contract.

The "other work and effort expended in assisting Ida in her efforts to complete the contracts," for which the Trial Court allowed the defendants $615.90, was not a harm resulting to the defendants from the plaintiffs' breach of the contract. Since the full $1,700 is in excess of the damages suffered by the defendants

on account of the plaintiffs' breach there should be judgment for the plaintiffs in that amount.

There being no other exceptions of merit, the order is

*Judgment for the plaintiffs for $1,700.*

All concurred.