Luria *v.* Robbins et al., Appellants.

Argued December 11, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Tom P. Monteverde,* with him *Max L. Lieberman,* and *Pelino, Wasserstrom, Chucas & Monteverde,* for appellants.

*Michael H. Egnal,* with him *Egnal and Egnal,* for appellees.

OPINION BY CERCONE, J., March 27, 1973:

This is an appeal by the defendants, John A. Robbins[1] and Jarnap Co., Inc., from the overturning by the

---

[1] Defendant Robbins is President and Chief Executive Officer of John A. Robbins Co., Inc., and defendant Jarnap Co., Inc., which is a wholly owned subsidiary of John A. Robbins Co., Inc. Defendant Robbins is the principal stockholder in the Robbins Co.

court en banc (consisting of one judge who was not the trial judge) of the trial judge's finding in defendants' favor. The case was tried non-jury on plaintiffs' complaint in assumpsit seeking the return of $30,000 paid to defendants on the purchase of a shopping center in Moorestown, New Jersey. The complaint alleged that the money was only placed in custody with defendants pending plaintiffs' decision to sign an agreement which first had to be approved by plaintiffs' attorney. The complaint alleged that plaintiffs subsequently refused to sign the agreement and their attorney refused to approve the proffered agreement. No reason was alleged by plaintiffs for their refusal to enter into a signed agreement or for their counsel's refusal to approve the agreement.

Defendants filed an answer and amended answer alleging a binding and enforceable oral agreement was entered into on May 2, 1966 for the purchase of the shopping center requiring a cash payment of $300,000, and that the $30,000 was paid pursuant to that agreement. Defendants counterclaimed for the balance of the purchase price but no longer press that claim, the shopping center having been subsequently sold to a third party at what they state to be a "significant loss". Defendants do, however, in this appeal, argue and defend their right to retain the down payment.

Plaintiffs filed preliminary objections to defendants' answers and counterclaim, which objections were dismissed. Thereafter plaintiffs filed a reply, containing new matter, in which they alleged material misrepresentations had been made to them concerning the property. Defendants, in a counter-reply, denied the misrepresentations.

This case was consolidated with the companion case of the real estate agent, Samuel Wachter, who sued plaintiffs for his commission (which is the subject of a

separate appeal), and was tried non-jury on April 17, 1968, before Judge GREENBERG. Judge GREENBERG, after hearing the evidence, found that a valid agreement existed between plaintiffs as purchasers and the defendants as vendors and that the plaintiffs had breached this agreement. However, Judge GREENBERG found that defendants were not entitled to specific performance but only to reasonable damages which he set at $13,500, defendants being required to return $16,500 to the plaintiffs.

Plaintiffs and defendants filed exceptions to the trial judge's findings and verdict of June 26, 1968. The exceptions were heard on June 27, 1969 by the court en banc consisting of Judge GREENBERG (the trial judge) and Judges JAMIESON and McDERMOTT. Judge GREENBERG thereafter left the bench and Judge McDERMOTT, without the parties' objection, was excused from the case. The parties agreed that Judge JAMIESON could render the decision of the court as a court en banc.

On February 24, 1972, Judge JAMIESON handed down a decision overruling and vacating the findings and verdict of the trial judge and entered a verdict for the plaintiffs for the return of the $30,000 plus interest from May 18, 1966 on the basis that "no valid agreement came into existence between plaintiffs and defendants". Defendants have appealed.

It is our conclusion from a review of the record in this case that the finding of the trial judge that a binding parol agreement did in fact exist between the parties, though not yet reduced to writing, was supported by the evidence and by the applicable law and that no valid reason exists for the overturning of that finding.

Whether or not a binding parol agreement exists, though not yet reduced to writing as contemplated by the parties, is a question of the parties' intent, as to

which parol evidence can be introduced: *Goldman et al. v. McShain,* 432 Pa. 61 (1968); *Schermer v. Wilmart,* 282 Pa. 55 (1925); Restatement of the Law of Contracts, §26. The credibility of the witnesses providing evidence of intent is necessarily an important factor in the fact-finder's determination of that issue. Unlike the judge who constituted the court en banc, the trial judge had the benefit, in passing upon that credibility, of a view of the witness and his manner and demeanor of testimony. As stated by Justice Charles Alvin JONES (later Chief Justice) in *Lacey v. Rutter,* 358 Pa. 502 (1948): "The reason for the persistent force of a chancellor's findings was aptly stated by Mr. Justice SIMPSON in Thorndell, Adm'x v. Munn, 298 Pa. 1, 3, 147 A. 848, 849, as follows: 'The nature of the principal differences of fact between the chancellor and the court en banc, again compels us to call attention to the well-settled rule that though it is the duty of the latter to review carefully such of the findings of fact of the former as have been made the subject of exceptions . . ., yet great weight is to be given to those findings in cases where, as here, they depend, in large degree, on the credibility of witnesses whom he saw and heard, and whose testimony, for that reason, he is best able to weigh. . . . As the tone and manner of a witness not infrequently indicate whether or not he is telling the truth, the rule above stated applies to findings of fact which are inferential, as well as to those which have been expressly testified to. . . .' "

This broad discretion of the fact-finding trial court in determining credibility has many times been commented upon and relied upon by the appellate courts in refusing to approve or allow any disturbance of the exercise of that discretion: *Mamallis v. Millbourne Borough,* 401 Pa. 375 (1960); *Holtz Will,* 422 Pa. 540 (1966).

The trial judge in this case, after seeing the witnesess and listening to their testimony, determined that the parties had in fact intended and did enter into a valid and binding parol agreement prior to its being reduced to the contemplated writing. That finding was amply supported by the credible evidence. Mr. Wachter, the real estate agent, testified that when he advised plaintiff Joseph Luria that the subject property was for sale, Luria told him to come right over because he wanted to buy it; that Joseph Luria then contacted his brother Leon, the other plaintiff, who was interested in participating in the venture; that Joseph Luria wanted to proceed in such a manner as to be sure of getting "the deal" and upon Wachter's suggestion of a $30,000 check as a good-faith payment, Joseph gave him a check for $15,000 and told him he would give the additional $15,000 when Wachter presented a signed agreement, notation of which was placed on that first $15,000 check as follows: "Deposit for the purchase of Moorestown Shopping Center; additional $15,000 upon signed agreement; terms $300,000 cash, subject to existing mortgage on A & P property." Luria instructed Wachter to make sure that Robbins "deposits the check immediately". because Luria was anxious that the transaction go through, and this instruction was communicated by Wachter to Robbins on May 3, 1966, along with delivery of the check. Robbins accepted the check and that day there was a special meeting of the Jarnap Board of Directors at which the sale to plaintiffs was approved and authorized. That same day, May 3, 1966, Robbins and the Company's Vice-President had prepared and delivered to Wachter at 5:00 p.m., an agreement of sale, together with a signed transmittal letter stating:

"Dear Mr. Wachter:

"Enclosed please find Buyer, Seller, Title and Samuel Wachter copies of Agreement of Sale above noted.

"Kindly arrange to have Buyer sign all copies of the Agreement at the space provided, and return all copies to us, together with additional deposit check. We, in turn, shall furnish you with fully executed Buyer, Title and Samuel Wachter copies.

"Thank you for your attention to this matter.

"Very truly yours,

"JARNAP CO., INC.

"BY: s/Ralph D. Anglin

"Ralph D. Anglin"

Wachter immediately advised Joseph Luria by telephone of the agreement, and Joseph told him: "Come right up . . . you made a deal." Wachter that same evening (May 3, 1966) went to Joseph's apartment and delivered the agreement and the transmittal letter. Plaintiffs read the agreement and the letter and expressed their satisfaction with the deal but stated they wanted their lawyer to check the agreement "as to form". At that time Leon Luria gave Wachter another check for $15,000 dated May 3, 1966, which check bore the following notation: "This additional deposit is subject to the approval of my attorney in regards to the agreements of Jarnap Company, Inc. of New Jersey."

The Lurias again instructed Wachter that he be certain to have that check deposited by defendants so that they would not lose the deal, Leon Luria commenting that Robbins could not back out if he cashed the checks. The next day Wachter delivered the check to Anglin (defendant company's Vice President), conveying the Lurias' instructions that they wanted the checks deposited immediately and that their attorney would check the agreement "as to form". Anglin had the two checks deposited that same day. A few days later Anglin received a telephone call from plaintiffs' counsel complimenting Anglin on the agreement and expressing no dissatisfaction with its terms.

The Lurias thereafter, with Wachter's assistance, made contacts relative to a mortgage for the financing of the transaction. On May 18, 1966, however, their counsel by letter advised defendant company, without giving any reason, that the Lurias were not going through with the transaction and requested the return of the $30,000 "left in the custody of your company". Another written request for the return of the $30,000 was made on May 24, 1966, again accompanied by silence as to the reason for the plaintiffs' change of position.

Defendants refused to return the $30,000 and proceeded with the preparation of the deed to plaintiffs, together with all other necessary documents for settlement on August 1, 1966, when Anglin, in behalf of the defendant company, presented himself for the completion of the transaction. In the meantime, on June 3, 1966, plaintiffs had instituted the within suit by complaint in assumpsit, which, as already stated, gave no reasons for their refusal to complete the transaction or for their counsel's failure to approve the written agreement.

We find that under this evidence the trial judge did not abuse his discretion or err as a matter of law in finding the parties had intended to be bound by their parol agreement even though it was to be reduced to writing. The statement on the first check that an additional $15,000 would be paid "upon signed agreement", cannot be relied on by plaintiffs as conclusive evidence of an intent to be bound only upon signed agreement because despite such notation plaintiffs, without accepting defendants' tender of execution of the agreement, did deliver the second $15,000 check to the defendants with instructions for its immediate deposit.

Nor did the trial judge err in not finding that the notation on the second check afforded plaintiffs an excuse for their nonperformance. That notation reads as

follows: "This additional deposit is subject to the approval of my attorney in regards to the agreements of Jarnap Company, Inc. of New Jersey." Such statement was ambiguous in meaning and properly explainable by oral evidence: *Universal Film Exchanges, Inc. v. Viking Theatre Corp.*, 400 Pa. 27 (1960). The oral testimony presented by defendants, through real estate agent Wachter, was that the attorney's approval was to be as to "form". That this was the meaning of the approval referred to in the check notation is substantiated by the surrounding circumstances, such as: plaintiffs' familiarity with all aspects of the premises, having had prior dealings concerning this shopping center over a period of a year or more; plaintiffs' satisfaction that the deal was a good one. Plaintiffs first sought to bind the defendant company to the terms and then submitted the written agreement to their counsel. Such evidence is inconsistent with an intent of plaintiffs to secure approval of counsel as to terms they sought and initiated, and with which they were satisfied, but is more consistent with an intent to secure counsel's approval only as to the legal formalities of the agreement. In fact, as already stated, when making demand for the return of the $30,000 in their letters and in their complaint in assumpsit, plaintiffs at no time referred to any terms which were the subject of their counsel's disapproval. On the contrary, the evidence was that plaintiffs' counsel in a telephone conversation with defendant company's Vice President, Mr. Anglin, was complimentary of the agreement and expressed no dissatisfaction with its terms. This conversation followed counsel's reading of his copy of the agreement, which copy when introduced into evidence revealed no editorial comments.

It was not until their reply to defendants' answer and counterclaim that plaintiffs sought to allege and rely on certain misrepresentations as a basis for their refusal to complete the transaction. The record amply

supports the trial judge's refusal to find misrepresentations or nondisclosure of all the material facts and circumstances concerning the property.

The findings of the trial judge were improperly overturned by the judge (sitting as the court en banc) who did not see or hear the witnesses who testified at the trial and upon whose credibility the governing issues of fact were required to be based. In the absence of any record proof of a capricious disbelief by the trial judge of evidence, the court en banc and this court must accept the determination of credibility as made by the trial judge: *Holtz Will*, 422 Pa. 540 (1966), at 547.

It necessarily follows as a matter of law from the trial judge's finding of a binding oral agreement that plaintiffs are not entitled to recover their $30,000 down payment. As stated in *Sanders v. Brock*, 230 Pa. 609 (1911) at 614-615: " 'No rule in respect to the contract (for the sale of real estate) is better settled,' says NELSON, J., in Hansbrough v. Peck, 72 U.S. 497, 506, 'than this: that the party who has advanced money or done an act in part performance of the agreement, and then stopped short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done.' " This rule was applied in *Sanders v. Brock*, supra, and in *Messinger v. Lee*, 163 Pa. Superior Ct. 297 (1948), even though the vendor, as in this case, after the purchaser's default, sold the property to a third party.

Under the facts as found by the trial judge, the plaintiffs were not, therefore, entitled to recover any portion of the $30,000 down payment made by them, and to this extent we modify his findings and verdict. The action of the court en banc is reversed and the verdict of the trial court as so modified in favor of the defendants is hereby reinstated.