491 A.2d 117

**John LANCELLOTTI, Appellant,**

v.

**Albert THOMAS and Lillian Thomas.**

Superior Court of Pennsylvania.

Argued March 21, 1984.

Filed March 22, 1985.

2

Irwin Paul, Philadelphia, for appellant.

James G. Buckler, Upper Darby, for appellees.

Before SPAETH, President Judge, and BECK and TAMI-LIA, JJ.

SPAETH, President Judge:

This appeal raises the question of whether a defaulting purchaser of a business who has also entered into a related lease for the property can recover any part of his payments made prior to default. The common law rule precluded a breaching buyer from recovering these payments. Today, we reject this rule, which created a forfeiture of the breaching buyer's payments and unjustly enriched the nonbreaching seller, and adopt § 374 of the Restatement (Second) Contracts (1979), which permits limited restitution. This case is remanded for further proceedings so that the trial court may apply the Restatement rule.

On July 25, 1973, the parties entered into an agreement in which appellant agreed to purchase appellees' luncheonette business and to rent from appellees the premises on which the business was located. Appellant agreed to buy the name of the business, the goodwill, and equipment; the inventory and real estate were not included in the agreement for the sale of the business. Appellees agreed to sell the business for the following consideration: $25,000 payable on signing of the agreement; appellant's promise that only he would own and operate the business; and appellant's promise to build an addition to the existing building, which would measure 16 feet by 16 feet, cost at least $15,000, and be 75 percent complete by May 1, 1973.[1]

It was also agreed that appellees would lease appellant the property on which the business was operated for a period of five years, with appellant having the option of an additional five-year term. The rent was $8,000 per year for a term from September 1, 1973, to August 31, 1978. A separate lease providing for this rental was executed by the parties on the same date that the agreement was executed. This lease specified that the agreement to build the existing building was a condition of the lease. In exchange for appellant's promise to build the addition, there was to be no rental charge for the property until August 31, 1973. Further, if the addition was not constructed as agreed, the lease would terminate automatically. An addendum, executed by the parties on August 14, 1973, modified this agreement, providing that "if the addition to the building as described in the Agreement is not constructed in accordance with the Agreement, the Buyer shall owe the Sellers $6,665 as rental for the property ..." for the period from July 25, 1973, to the end of that summer season. The addendum also provided that all the equipment would revert to appellees upon the appellant's default in regard to the addition.

Appellant paid appellees the $25,000 as agreed, and began to operate the business. However, at the end of the 1973

---

1. The parties agree that this date was incorrect, and that the date the parties intended was May 1, 1974.

4

season, problems arose regarding the construction of the addition. Appellant claims that the building permit necessary to construct the addition was denied. Appellees claim that they obtained the building permit and presented it to appellant, who refused to begin construction. Additionally appellees claim that appellant agreed to reimburse them if they built the addition. At a cost of approximately $11,000, appellees did build a 20 feet by 40 feet addition. In the spring of 1974 appellees discovered that appellant was no longer interested in operating the business. There is no evidence in the record that appellant paid any rent from September 1, 1973, as the first rental payment was not due until May 15, 1974. Appellees resumed possession of the business and, upon opening the business for the 1974 summer season, found some of their equipment missing.

Appellant's complaint in assumpsit demanded that appellees return the $25,000 plus interest. Appellees denied that appellant was entitled to recovery of this sum and counterclaimed for damages totalling $52,000: $6,665 as rental for the property for the 1973 summer season and the remainder as compensation for "grievous damage to [appellees'] business, its goodwill and its physical operation ..." and appellee Lillian Thomas suffering "nervous illness, pain and suffering inclusive of serious bodily injury and necessitating bed rest and physicians' supervision for one year after [appellant's] default." Defendants' Counterclaim and New Matter, paras. 9–11. In his answer, Appellant only conceded liability for the $6,665 rent under the terms of the addendum. Plaintiff's Answer to Counterclaim and New Matter, para. 9. The trial court, sitting without a jury, found against appellant on the original claim, allowing appellees to retain the $25,000 paid by appellant, and for appellees on the counterclaim, allowing them to recover the $6,665 rent.

–2–

At one time the common law rule prohibiting a defaulting party on a contract from recovering was the majority rule. J. Calamari and J. Perillo, The Law of Contracts § 11–26, at

427 (2d ed. 1977). However, a line of cases, apparently beginning with *Britton v. Turner*, 6 N.H. 481 (1834), departed from the common law rule. The merit of the common law rule was its recognition that the party who breaches should not be allowed "to have advantage from his own wrong." Corbin, The Right of a Defaulting Vendee to the Restitution of Instalments Paid, 40 Yale L.J. 1013, 1014 (1931). As Professor Perillo states, allowing recovery "invites contract-breaking and rewards morally unworthy conduct." Restitution in the Second *Restatement of Contracts*, 81 Colum.L.Rev. 37, 50 (1981). Its weakness, however, was its failure to recognize that the nonbreaching party should not obtain a windfall from the breach. The party who breaches after almost completely performing should not be more severely penalized than the party who breaches by not acting at all or after only beginning to act. Under the common law rule the injured party retains more benefit the more completely the breaching party has performed prior to the default. Thus it has been said that "to allow the injured party to retain the benefit of the part performance . . ., without making restitution of any part of such value, is the enforcement of a penalty or forfeiture against the contract-breaker." Corbin, *supra*, at 1013.

Critics of the common law rule have been arguing for its demise for over fifty years. *See* Corbin, *supra*. *See also* Calamari and Perillo, *supra*, at § 11–26; 5A Corbin on Contracts §§ 1122–1135 (1964); 12 S. Williston, A Treatise on the Law of Contracts §§ 1473–78 (3d ed. 1970). In response to this criticism an alternative rule has been adopted in the Restatement of Contracts.

The first Restatement of Contracts (1932) adopted the following rule:

§ 357. Restitution in Favor of a Plaintiff Who Is Himself In Default.

(1) Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff

can get judgment, except as stated in Subsection (2), for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach, in no case exceeding a ratable proportion of the agreed compensation, if

(a) the plaintiff's breach or non-performance is not wilful and deliberate; or

(b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious.

(2) The plaintiff has no right to compensation for his part performance if it is merely a payment of earnest money, or if the contract provides that it may be retained and it is not so greatly in excess of the defendant's harm that the provision is rejected as imposing a penalty.

(3) The measure of the defendant's benefit from the plaintiff's part performance is the amount by which he has been enriched as a result of such performance unless the facts are those stated in Subsection (1b), in which case it is the price fixed by the contract for such part performance, or, if no price is so fixed, a ratable proportion of the total contract price.

In 1979, this rule was liberalized. Restatement (Second) of Contracts § 374 (1979) provides:

§ 374. **Restitution in Favor of Party in Breach**

(1) Subject to the rule stated in Subsection (2), if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.

(2) To the extent that, under the manifested assent of the parties, a party's performance is to be retained in the case of breach, that party is not entitled to restitution if

the value of the performance as liquidated damages is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. Thus the first Restatement's exclusion of the willful defaulting purchaser from recovery was deleted, apparently in part due to the influence of the Uniform Commercial Code's permitting recovery by a buyer who willfully defaults.[2] *Id.*, Reporter's Note at 218. Professor Perillo suggests that the injured party has adequate protection without the common law rule.[3] Choosing "the just path," he therefore rejects the common law rule, explaining this choice by saying that times have changed. "What appears to be just to one generation may be viewed differently by another." Perillo, *supra*, at 50. *See also* 12 S. Williston, *supra*, § 1473, at 222 ("The mores of the time and place will often determine which policy will be followed.").

**2.** In Pennsylvania, 13 Pa.C.S. § 2718, provides:

**§ 2718. Liquidation or limitation of damages; deposits**

(a) **Liquidated damages in agreement.**—Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

(b) **Right of buyer to restitution.**—Where the seller justifiably withholds delivery of goods because of the breach of the buyer, the buyer is entitled to restitution of any amount by which the sum of his payments exceeds:

(1) the amount to which the seller is entitled by virtue of terms liquidating the damages of the seller in accordance with subsection (a); or

(2) in the absence of such terms, 20% of the value of the total performance for which the buyer is obligated under the contract or $500, whichever is smaller.

. . . . .

**3.** He identifies four types of protection:

First, the defaulting party's right to recovery is subject to the aggrieved party's right to offset his damages. Second, the measure of benefit is limited to the actual enrichment and cannot exceed a ratable portion of the contract price. Third, restitution is denied to the extent that the criteria for a valid liquidated damages clause are present. Fourth, restitution is denied if the aggrieved party seeks and is entitled to specific performance.

Perillo, *supra*, at 50 (footnotes omitted).

Many jurisdictions have rejected the common law rule and permit recovery by the defaulting party. *See, e.g., Amtorg Trading Corp. v. Miehle Printing Press and Manufacturing Co.*, 206 F.2d 103 (2d Cir.1953) (noting with approval § 357 of Restatement (First) of Contracts); *Nordin Construction Company v. City of Nome*, 489 P.2d 455 (Alaska 1971) (citing with approval § 357 of Restatement (First) of Contracts in analyzing a theory of recovery based on unjust enrichment); *Freedman v. Rector, Wardens, Vestrymen of St. Mathias Parish*, 37 Cal.2d 16, 230 P.2d 629 (1951); *Boyce Construction Corp. v. District Board of Trustees of Valencia Community College*, 414 So.2d 634 (Fla.Dist.Ct. App.1982) (following rule stated in § 374, Restatement (Second) of Contracts); *Nelson v. Hazel*, 91 Idaho 850, 433 P.2d 120 (1967) (negligent contractor can recover for benefits conferred, citing comment c of Restatement (First) of Contracts § 357); *Broersma v. Sinor*, 106 Idaho 155, 676 P.2d 730 (Idaho App.1984) (approving the rule in Restatement (Second) of Contracts § 374); *Washington v. Claassen*, 218 Kan. 577, 545 P.2d 387 (1976) (breaching purchaser of land cannot obtain recovery where vendor able and willing to perform, citing comment on § 357 Restatement (First) of Contracts); *Kitchin v. Mori*, 84 Nev. 181, 437 P.2d 865 (1968) (adopting rule of Restatement (First) of Contracts § 357 and holding that even a willful vendee who defaults can recover); *Newcomb v. Ray*, 99 N.H. 463, 114 A.2d 882 (1955) (following Restatement (First) of Contracts § 357); *Comerata v. Chaumont, Inc.*, 52 N.J.Super. 299, 145 A.2d 471 (1958) (following Restatement (First) of Contracts § 357); *Kulseth v. Rotenberger*, 320 N.W.2d 920 (North Dakota 1982) (following rule in Restatement (Second) of Contracts § 374); *Golden v. Golden*, 273 Or. 506, 541 P.2d 1397 (1975) (restitution permitted in land sale contract must be offset by loss to vendor, citing Restatement (First) of Contracts § 357 for this principle); *De Leon v. Aldrete*, 398 S.W.2d 160 (Tex.Civ.App.1965); *Fuller v. Rosinski*, 79 Wash.2d 719, 488 P.2d 1061 (1971) (breaching plaintiff entitled to some compensation under § 357 of Restatement

(First) of Contracts); *Hartford Elevator, Inc. v. Lauer,* 94 Wis.2d 571, 289 N.W.2d 280 (1980) (approving of § 357 of Restatement (First) of Contracts).

This development has been called the modern trend. *See Quillen v. Kelley,* 216 Md. 396, 140 A.2d 517 (1958). *See also* 12 S. Williston, *supra,* § 1473, at 222 (cases permitting recovery are now the weight of the authority); 5A Corbin on Contracts, *supra,* § 1122, at 3 (common law rule is broad statement not supported by the actual decisions). *But see* 1 G. Palmer, *The Law of Restitution* 568 (1978) (no valid generalization may be made regarding when a defaulting vendee can recover). It may be that the growing number of jurisdictions permitting recovery have been influenced by the widespread adoption of the Uniform Commercial Code § 2–718. *See, e.g., Maxey v. Glindmeyer,* 379 So.2d 297 (Miss.1980) (allowing recovery of excess of seller's actual damages in land sale contract by following the logic of the state statute equivalent to § 2–718 of the Uniform Commercial Code). Indeed, the common law rule is no longer intact even with respect to land sales contracts. *See, e.g., Honey v. Henry's Franchise Leasing Corp.,* 64 Cal.2d 801, 415 P.2d 833, 52 Cal.Rptr. 18 (1966); *McLendon v. Safe Realty Corp.,* 401 N.E.2d 80 (Ind.App.1980); *Newcomb v. Ray, supra; De Leon v. Aldrete, supra; and see* 1 G. Palmer, *supra,* at 596 n. 15 (citing cases).

■ In Pennsylvania, the common law rule has been applied to contracts for the sale of real property. *Kaufman Hotel & Restaurant Co. v. Thomas,* 411 Pa. 87, 190 A.2d 434 (1963); *Luria v. Robbins,* 223 Pa.Super. 456, 302 A.2d 361 (1973). In such cases, however, the seller has several remedies against a breaching buyer, including, in appropriate cases, an action for specific performance or for the purchase price. *See Trachtenburg v. Sibarco Stations, Inc.,* 477 Pa. 517, 384 A.2d 1209 (1978). *See also* 5A Corbin on Contracts, *supra,* § 1145. As long as the seller remains ready, able, and willing to perform a contract for the sale of real property, the breaching buyer has no right to restitution of payments made prior to default. *See* 5A Corbin on Contracts, *supra,* at § 1130.

The common law rule has also been applied in Pennsylvania to contracts for the sale of goods. *Atlantic City Tire and Rubber Corp. v. Southwark Foundry & Machine Co.,* 289 Pa. 569, 137 A. 807 (1927). However, Pennsylvania has since adopted the Uniform Commercial Code, which, as to contracts for the sale of goods, has modified the common law rule by 13 Pa.C.S. § 2718(b), which permits a breaching party to recover restitution. *See* note 2, *supra.*

The viability of the common law rule permitting forfeiture has also been undermined in other areas of Pennsylvania law. In *Estate of Cahen,* 483 Pa. 157, 168 n. 10, 394 A.2d 958, 964 n. 10 (1978), the Supreme Court held that assuming that a breaching fiduciary could recover in unjust enrichment, the basis would be Restatement of Contracts § 357 (1932), which allows recovery by a breaching party to the extent that the benefits exceed the losses sustained by the other party.[4]

–3–

■ In regard to the present case, § 374 of the Restatement (Second) of Contracts represents a more enlightened approach than the common law rule. "Rules of contract law are not rules of punishment; the contract breaker is not an outlaw." Perillo, *supra,* at 50. The party who committed a breach should be entitled to recover "any benefit ... in excess of the loss that he has caused by his own breach." Restatement (Second) of Contracts § 374(1).

■ This conclusion leads to the further conclusion that we should remand this case to the trial court. The trial court rested its decision on the common law rule. Slip op. of trial court at 7–8. Thus it never considered whether appellant is entitled to restitution, Restatement (Second) of Contracts § 374(1), nor, if appellant is not entitled to resti-

4. The assertion in the dissenting opinion that "the majority does not and cannot cite *any* Pennsylvania authority" allowing a breaching party recovery, dissent op. at 11–12, fails to acknowledge the Supreme Court's decision in *Cahen.* While not citing *Cahen,* the dissenting opinion does cite *Luria v. Robbins,* 223 Pa.Super. 456, 302 A.2d 361 (1973), but as we have already discussed, we find *Luria* distinguishable.

tution, whether retention of the $25,000 was "reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss," *id.*, § 374(2).[5]

Remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

TAMILIA, J., files a dissenting opinion.

TAMILIA, Judge, dissenting:

I strongly dissent. In the first instance, the majority does not and cannot cite *any* Pennsylvania authority adopting the rule cited in § 374 of the Second Restatement of Contracts. Although the ostensible basis for remand is the trial court's reliance on outmoded law, the majority relies on law so new as to be virtually unknown in this jurisdiction. The law in Pennsylvania has been and continues to be that where a binding contract exists, and there is no allegation that the contract itself is void or voidable, a breaching party is not entitled to recovery. *Luria v. Robinson*, 223 Pa.Super. 456, 302 A.2d 361 (1978). While our Supreme Court may yet abrogate the forfeiture principle in this Commonwealth, it has not yet seen fit to do so, and we may not usurp its prerogatives, particularly when the result would be unjust.

Secondly, the Uniform Commercial Code § 2718, cited by the majority in (partial) support, is applicable only to the sale of goods, and, while it and some of the equally inapplicable cases referred to by the majority may be part of a trend, the mainstream of contract law in Pennsylvania has

**5.** We do not share the view expressed in the dissenting opinion that "the most important determinant of the proper result in this case is the trial judge's assessment of the witness[es]' credibility." Dissent op., at 11–12. To the contrary, as we have discussed, the trial court did not base its decision on an assessment of credibility but on the common law rule. Thus the court did not even consider the possibility of recovery by the breaching plaintiff. We are remanding so that the trial court may consider whether appellant is entitled to restitution. If the trial court again finds that it was the intention of the parties that the $25,000 be retained in the event of a breach, *see* slip op. of trial court at 7, then the court must determine whether this sum is reasonable. If the sum is unreasonable, appellant is entitled to restitution. *See* Restatement (Second) of Contracts § 374 comment c.

not yet been diverted by it. Indeed the identification of the jurisdictions cited as the vanguard of change is for the most part questionable, as of those states relied upon to confer legitimacy on the majority's somewhat arbitrary conclusion, only one may be termed authoritative.

Lastly, and given the current state of the law, the most important determinant of the proper result in this case is the trial judge's assessment of the witness' credibility, here resolved in appellee's favor. The majority, far from according these findings their due, ignores them, contrary to law and our mandate. *Knepp v. Nationwide Insurance Co.,* 324 Pa.Super. 479, 471 A.2d 1257 (1984).

The trial court correctly points out that the understanding of the parties is clearly evidenced by the agreements they signed. In breaching those agreements, appellant has engaged in what might charitably be termed sharp practice. The facts reasonably support the inference that appellant learned the hoagie business, benefited from the acquired trade and good will at appellees' place of business, then conducted the hoagie business at its previously owned pizza shop in the following season. Restitution in this instance constitutes a wholly unmerited reward for bad faith. We do not feel that such a result is consistent with the intent of law or the expectations of equity.