NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2606
_____

In re:  Renee Marie Thorpe,
                                            Debtor

Joseph Q. Mirarchi Legal Services, P.C.,

                                            Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-17-cv-00857)
District Judge: Honorable Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 28, 2018

Before: AMBRO, CHAGARES, and GREENAWAY, JR., <u>Circuit Judges</u>

(Opinion filed: November 20, 2018)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

AMBRO, Circuit Judge

Joseph Mirarchi, an attorney who previously represented Renee and Dale Thorpe (the "Thorpes"), filed a motion in the Bankruptcy Court to recover legal fees. After a hearing, the Bankruptcy Court recommended that the District Court enter an order concluding that Mirarchi had no contractual right to recover fees and that his wrongful conduct barred him from recovery in equity under the theory of *quantum meruit*. The District Court adopted the substance of the Bankruptcy Court's recommendation in an order denying his motion, and Mirarchi appeals to us.

In this non-core proceeding, we review *de novo* conclusions of law and "treat the district court as the trial court, accepting its findings of fact unless clearly erroneous." *Copelin v. Spirco, Inc.*, 182 F.3d 174, 180 (3d Cir. 1999) (citing 28 U.S.C. § 157). "Mixed questions of law and fact must be divided into their respective components and the appropriate test applied." *First Jersey Nat'l Bank v. Brown* (*In re Brown*), 951 F.2d 564, 567 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–03 (3d Cir. 1981)).

Mirarchi represented the Thorpes in a Pennsylvania state court litigation against Nationwide Mutual Insurance Company, during which the Thorpes filed for protection under Chapter 12 of the Bankruptcy Code. Under the representation agreement, Mirarchi was entitled to receive a contingency fee equal to 35% of the recovery, if any. But during his service to the Thorpes he was administratively suspended from the practice of law because his bar membership lapsed after he failed to meet his continuing legal education ("CLE") requirement by a single credit. On learning of his suspension, Mirarchi

2

completed his outstanding CLE obligation and, approximately one month after the suspension began, he was reinstated to the practice of law and continued to act as the attorney for the Thorpes.

While suspended, Mirarchi negotiated on behalf of the Thorpes a settlement with Nationwide for $324,000. He did not proactively inform them of his suspension, but they learned of it before deciding whether to accept the settlement he had negotiated and started asking him questions about the suspension. Mirarchi reassured the Thorpes that his administrative suspension was nothing to worry about, but the Thorpes, claiming that they disagreed and were dissatisfied with his representation anyway, terminated his representation and retained new counsel. Shortly after terminating Mirarchi, the Thorpes took their new counsel's advice and accepted a settlement agreement in the amount Mirarchi negotiated. Because the Thorpes terminated Mirarchi before accepting the settlement amount he negotiated, they refused to pay him the contingency fee stated in his representation agreement or an amount equal to the reasonable value of his work. The disputed funds are being held in escrow until this matter is resolved.

Mirarchi argues (A) he is entitled to the agreed contingency fee because the Thorpes' conduct following his reinstatement ratified his representation, and (B) even if the fee agreement were no longer enforceable, he is entitled to recover under the equitable theory of *quantum meruit*. Mirarchi's claims against the Thorpes trace to Pennsylvania common law. Absent a controlling decision by the Pennsylvania Supreme Court, we must predict how that Court would rule if faced with the same issues by looking at the decisions of the state's intermediate appellate courts. *Meyer v. CUNA Mut.*

3

*Ins. Soc'y*, 648 F.3d 154, 162 (3d Cir. 2011). We hold that Mirarchi has no entitlement to the contingency fee, but he may have a claim in *quantum meruit* against the Thorpes depending on facts the District Court and Bankruptcy Court did not reach due to the legal analyses they employed. Accordingly, we affirm in part, vacate in part, and remand the case for further proceedings consistent with this opinion.

## A. **Contract claim**

In Pennsylvania, "a client has a right to terminate his relationship with an attorney at any time, regardless of whether there exists a contract for fees." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1099 (Pa. 2018) ("*Meyer Darragh II*"). Here, the Thorpes terminated Mirarchi's representation before the contingency fee was triggered. Under a contingency agreement, "[w]here the contingency has not occurred, the fee has not been earned." *Mager v. Bultena*, 797 A.2d 948, 958 (Pa. Super. Ct. 2002). Because the contingency did not occur during his representation of the Thorpes, Mirarchi is not entitled to collect the fee. We affirm the District Court's ruling on this ground.

## B. *Quantum meruit* **claim**

The Bankruptcy Court concluded that Mirarchi was not entitled to recovery in *quantum meruit* because the way he handled his administrative suspension constituted "wrongful conduct" that precluded recovery in equity. *In re Thorpe*, 563 B.R. 576, 605 (Bankr. E.D. Pa. 2017). The District Court reached the same conclusion. We thus begin with whether Mirarchi's conduct was "wrongful" such that he is precluded from a recovery in *quantum meruit*.

4

### 1. "Wrongful conduct"

To reach the conclusion that his conduct was "wrongful" enough to preclude recovery in equity, the Bankruptcy Court first inquired whether Mirarchi materially breached his representation agreement with the Thorpes. *Thorpe*, 563 B.R. at 603. It concluded that occurred when Mirarchi failed to disclose his administrative suspension, engaged in the unauthorized practice of law, and was not forthcoming about his suspension. *Id.* at 604. Because the Bankruptcy Court viewed a "material breach" to bar any recovery—even for *quantum meruit*—it concluded that Mirarchi was foreclosed from recovery. *Id.* The District Court adopted this component of the Bankruptcy Court's opinion. (A29 ("In this case, Mirarchi failed to fulfill his professional responsibilities, and his subsequent conduct provided just cause for termination. . . . The Court . . . adopts the Bankruptcy Court's finding that Mirarchi's termination was the result of his own wrongful acts, and concludes that he is thereby barred from recovery in *quantum meruit*.").)

We believe the Bankruptcy Court and the District Court went too far in concluding that the termination here was "for cause" or based on a "material breach." Moreover, even were there a material breach, an attorney is not barred completely from recovering in *quantum meruit* in this context. The Courts' conclusion appears to be based in large part on the Superior Court of Pennsylvania's decision in *Lampl v. Latkanich*, cited also by the parties, which observed that the rule "appears to be that an attorney is entitled to no compensation whatever . . . if he is discharged because of his own wrongful acts." 231 A.2d 890, 894 (Pa. Super. Ct. 1967). But is missing one CLE credit a "wrongful act"

5

for equitable purposes?  Is that focus too rigid or can it be more practical?  As we observed in *Pearson v. Tanner*, "[n]o Pennsylvania court has addressed whether a suspended or disbarred attorney is entitled to recover from a former client, in *quantum meruit,* the value of legal services rendered pursuant to a contingency-fee contract prior to the attorney's suspension or disbarment."  513 F. App'x 152, 155 (3d Cir. 2013).

And even in the face of a material breach, in *Lancellotti v. Thomas* the Superior Court of Pennsylvania adopted the Restatement (Second) of Contracts § 374 (1979), which sets out the "modern" rule of restitution in favor of a party that breaches a contract: if one party terminates a contract based on the other party's material breach, "the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance . . . in excess of the loss that he has caused by his own breach."  491 A.2d 117, 119 (Pa. Super. Ct. 1985).  Based on this principle, the Court sustained a claim of restitution brought by a party that materially breached an agreement after the non-breaching party exercised its right to terminate the agreement based on the breach.  *Id.* at 119–21.

We generally adopt the rulings of the Superior Court of Pennsylvania on matters of state law unless we are aware of "other persuasive data that the highest court of the state would decide otherwise."  *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007) (quoting *West v. AT&T Co.*, 311 U.S. 223, 237 (1940)).  Aware of no such persuasive data, we conclude that the Supreme Court of Pennsylvania would adopt the modern approach to restitution in favor of a breaching party for service contracts, as

6

articulated in § 374 of the Restatement (Second).[1] We also believe that § 374 applies in full force to claims by a service provider brought under the label of "*quantum meruit*" given the Pennsylvania Supreme Court's understanding that "[a]n action in *quantum meruit* sounds in quasi-contract or contract implied in law and seeks the equitable remedy of restitution where one person has been unjustly enriched by the services of another." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1250 n.4 (Pa. 2016).

For these reasons, we part with our District Court colleague's ruling that Mirarchi's supposedly "material breach" of the agreement precluded him from recovering in *quantum meruit*.[2] We believe the Supreme Court of Pennsylvania, when presented with a case in which a party seeking *quantum meruit* is shown to have acted wrongfully, would evaluate the conduct under the rubric of unclean hands. *See Stauffer v. Stauffer*, 351 A.2d 236, 244 (Pa. 1976); *A.E.V., Inc. v. M.L. Harrold, Inc.*, No. 1106 WDA 2013, 2014 WL 10979711, at *7 (Pa. Super. Ct. Mar. 3, 2014). Thus rather than asking whether Mirarchi committed a "material breach," we should determine whether Mirarchi's equitable claim is barred under the doctrine of unclean hands.

---

[1] We note that courts in our Circuit have predicted that the Supreme Court of Pennsylvania will adopt § 374 of the Restatement. *See, e.g.*, *Alstom Power, Inc. v. RMF Indus. Contracting, Inc.*, 418 F. Supp. 2d 766, 779–80 (W.D. Pa. 2006) (collecting cases).

[2] We express some doubt about the sincerity of the Thorpes' claim that Mirarchi's brief administrative suspension for missing a single CLE credit was important to them, given that they accepted the very settlement amount he negotiated soon after they terminated him. It appears to us that the Thorpes' claim of interest in Mirarchi's continuing legal education may have been motivated by the significant sum they stood to gain by using his administrative suspension to deny his agreed fees.

With the issue so framed, the resolution of the *quantum meruit* issue in this appeal largely follows from the Supreme Court of Pennsylvania's decision in *In re Estate of Pedrick*, 482 A.2d 215 (Pa. 1984). There, the Court considered whether an attorney was barred by the doctrine of unclean hands from recovering under a will he obtained by visiting the decedent (Pedrick) alone on his deathbed, drafting a new superseding will that would give the attorney Pedrick's entire estate (including his federal pension), obtaining Pedrick's signature without any witnesses (despite having plenty of time to do so), testifying as the sole witness to the will in probate court, and then having Pedrick's body cremated because it was cheaper than a burial. *Id.* at 220–22.

On its way to holding the attorney was barred from recovery, the Court made pronouncements that are relevant here. To begin, it expressly rejected the notion that an attorney's violation of the Pennsylvania ethical rules governing lawyers would automatically trigger the doctrine of unclean hands. *Id.* at 222–23. Indeed, it issued a broad proclamation stating that the Pennsylvania Code of Professional Responsibility "does not have the force of substantive law" and generally is not "a basis for altering the rules of law, including evidentiary rules, presumptions and burdens of proof, which would otherwise apply to a case." *Id.* at 217, 221. The Court continued that

> while it may be appropriate under certain circumstances for trial courts to enforce the Code of Professional Responsibility by disqualifying counsel or otherwise restraining his participation or conduct in litigation before them in order to protect the rights of litigants to a fair trial, we are not inclined to extend that enforcement power and allow our trial courts themselves to use the [American Bar Association] Canons [of Professional Ethics] to alter substantive law or to punish attorney misconduct.

8

*Id.* at 221. *Pedrick* noted that its application of the Code is consistent with "Article V, Section 10(c) of our Constitution which places disciplinary power in [the Supreme Court of Pennsylvania]." *Id.*

After clarifying that a violation of the attorney ethical rules was not necessarily a sufficient ground to find unclean hands, *Pedrick* explained why that doctrine barred recovery in the particular circumstances of its case. The attorney did not just violate a rule of professional conduct while he was representing a client; rather, he attempted to use a court process (the probate process) "to secure a benefit from the very conduct which the accepted standards of the profession preclude." *Id.* at 222. Moreover, that conduct was so far beyond the pale of acceptable attorney behavior, and so harmful to the individuals involved, that it was "unconscionable" and "shock[ed] the conscience" of the Court. *Id.* at 223 & n.14.

Against this background, we hold that the doctrine of unclean hands does not bar the *quantum meruit* claim of Mirarchi. We acknowledge that he was placed on administrative suspension due to his own failure, although seemingly negligent, to obtain the requisite CLE credits to continue practicing law in Pennsylvania. We also acknowledge that Mirarchi's failure to disclose his administrative suspension violated the Pennsylvania Rules of Disciplinary Enforcement, *see* Pa. R.D.E. 217(b), and that his work on behalf of the Thorpes during his one-month administrative suspension constituted the unauthorized practice of law, *see* 42 Pa. C.S.A. § 2524; Pa. R.D.E. 217(j). We do not applaud the manner in which Mirarchi handled his representation of the Thorpes once he was placed on administrative suspension. Nonetheless, we do not

9

believe his conduct shocks the conscience such that he should be completely denied recovery based on the doctrine of unclean hands.

We note also that our holding is consistent with one of the concerns in the preamble to the Pennsylvania Rules of Professional Conduct:

> [T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such a duty.

Pa. R.P.C. Preamble ¶ 19; *see also Pedrick*, 482 A.2d at 221–22 (favorably citing similar language in a prior draft version of the preamble). Although the professional conduct rules that Mirarchi violated are formed in the Pennsylvania Rules of Disciplinary Enforcement (not the Rules of Professional Conduct), we believe the same concern exists in this context and are troubled by the incentives created where a litigant adverse to an attorney can escape its liability by establishing the attorney's noncompliance with professional rules governing lawyers and not directly their relations with clients.

### 2. *Prima facie* claim

The District Court held that Mirarchi was completely precluded from recovery based on his wrongful conduct, and thus did not address in detail whether he has a viable *prima facie* claim for *quantum meruit*. (A26–29.) To win such a claim, Mirarchi must show (1) the benefits conferred by him on the Thorpes, (2) appreciation of these benefits by them, and (3) "acceptance and retention of [those] benefits under such circumstances

10

that it would be inequitable for [the Thorpes] to retain the benefit without payment of value." *Meyer Darragh II*, 179 A.3d at 1102 (quoting *Shafer Elec. & Constr. v. Mantia*, 96 A.3d 989, 993 (Pa. 2014)). The record facts as to each of these elements are clear: the Thorpes benefitted from Mirarchi's negotiating a settlement on their behalf, and after they terminated him, they accepted a settlement in the same amount he negotiated. We have no trouble concluding that Mirarchi has a viable *quantum meruit* claim of at least some amount.

But this is as far as we can go on appeal in sustaining Mirarchi's *quantum meruit* claim. We leave it to the Bankruptcy Court and the District Court to determine in the first instance the proper amount of Mirarchi's recovery in *quantum meruit*.[3] We also leave to the courts the question—which is suggested but not presented by the record on this appeal—of whether Mirarchi's claim of *quantum meruit* is properly asserted against the Thorpes or instead must be brought against their subsequent attorney after that attorney is paid. *See Meyer Darragh II*, 179 A.3d at 1105 ("[P]redecessor counsel may recover damages in *quantum meruit* against successor counsel in a contingent fee dispute . . . where the facts demonstrate unjust enrichment . . . which would be unjust to retain without some payment to predecessor counsel.").

For these reasons, we affirm in part, vacate in part, and remand the case for further proceedings consistent with this opinion. We leave to our District Court colleague whether to refer the case back to the Bankruptcy Court.

---

[3] There is arguably another thorny question related to the computation of his *quantum meruit* amount—namely, whether Mirarchi can recover for legal services rendered while he was administratively suspended.

11